# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**JOSEPH W. ALLEN**                                                **PLAINTIFF**

**v.**                              **LEAD CIVIL ACTION NO. 3:07CV-P261-H**

**NASIRUDDIN SIDDIQUI** *et al.*                              **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Joseph Wayne Allen, initially commenced this action by filing seven separate civil rights complaints under 42 U.S.C. § 1983: 3:07CV-P261-H, 3:07CV-P262-H, 3:07CV-P263-H, 3:07CV-P264-H, 3:07CV-P293-H, 3:07CV-P294-H, and 3:07CV-P295-H. Upon review, the Court determined that these actions were predicated primarily on the same factual scenario. Accordingly, by Order entered September 4, 2007, the Court consolidated the seven actions with the lead action to bear the above case number. The consolidated complaint is now before the Court for screening pursuant to 28 U.S.C. § 1915A.[1] For the reasons set forth below, the Court will allow several of Plaintiff's Fourteenth Amendment Substantive Due Process claims as well as his state law medical malpractice claims to proceed for further development, but will dismiss the remainder of his claims.

### I. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff was previously held as a pretrial detainee by the Louisville Metro Department of Corrections ("DOC"). Because Plaintiff was experiencing some psychological problems during his detainment, on or about June 14, 2005, DOC officials sent Plaintiff to the Kentucky Correctional Psychiatric Center ("KCPC") in LaGrange, Kentucky, for a competency evaluation

---

[1] Pursuant to 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Thus, even though Plaintiff paid the $350.00 filing fee, the Court is still required to screen his complaint before service on Defendants. *Id.*

and to be placed on a proper drug regime to treat Plaintiff's bi-polar disorder. While at KCPC Plaintiff was prescribed the drug Seroquel. Plaintiff alleges that he was not informed by the medical staff at KCPC of any of the possible side effects of Seroquel. However, almost immediately, Plaintiff noticed that the drug made him feel bad and requested to see a doctor. Plaintiff alleges that his requests were denied. After Plaintiff was sent back to DOC, he alleges that he continued to complain about the side effects of the Seroquel and requested that his medication be changed. Plaintiff states that his requests were ignored until June 2006, by which time he had already developed diabetes and other complications, which Plaintiff attributes to his physicians' failure to discontinue his treatment with the Seroquel earlier.[2] Plaintiff also alleges that the medical care he received at DOC was insufficient in various other ways.[3] To this end, Plaintiff has sued the following persons in both their individual and official capacities: Nasiruddin Siddiqui, KCPC doctor; Frank Deland, KCPC doctor; Edwin O. Walker, KCPC doctor; Patricia Keeling, Prison Health Services Administrator; Alicia Kelley, Prison Health Services Nursing Director; Lawrence Mudd, DOC doctor; and Renate Stingl, DOC doctor. He has also sued KCPC and Prison Health Services, Inc. Specifically, Plaintiff claims that Defendants' actions violated his Fifth, Sixth, Eighth, and Fourteenth (Due Process and Equal Protection Clauses) Amendment rights under the United States Constitution and his rights under Sections One, Eleven, and Seventeen of the Kentucky Constitution. Plaintiff also appears to be asserting a state-law medical malpractice action against Defendant doctors. Plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

---

[2] The Court notes that the Food and Drug Administration has acknowledged that use of Seroquel can lead to the onset of diabetes. *See* FDA Warning Letter 11/06.

[3] The Court will address the specifics of Plaintiff's claims in the analysis section of this Memorandum Opinion.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --U.S.--, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. Additionally, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

## III. ANALYSIS

**A.  Fifth Amendment**

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in

3

>jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims. Based on the facts as alleged by Plaintiff, the Court does not find that Plaintiff has a cognizable Fifth Amendment claim against Defendants in this instance. Specifically, the Court notes that to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g., Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of state and municipal, not federal, officials are at issue. The Court will dismiss the Fifth Amendment claim.

**B.      Eighth Amendment**

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend VIII. The Eighth Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Because the injuries alleged by Plaintiff occurred while he was a pretrial detainee, his reliance on the Eighth Amendment is misplaced, and the Court will dismiss his Eighth Amendment claim. The Court will instead consider his cruel and unusual punishment claims under the Fourteenth Amendment Due Process Clause, which provides pretrial detainees a right to be free from cruel and unusual punishment that is analogous to the Eighth Amendment rights of convicted prisoners. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

### C. Fourteenth Amendment Equal Protection Clause

As for the Plaintiff's Fourteenth Amendment Equal Protection claim, he has failed to allege that he was discriminated against because of his membership in a protected class or that he has been treated differently from those similarly situated. *See Jones v. Union County, TN*, 296 F.3d 417, 426 (6th Cir. 2002) (holding that in order to state a claim under the Equal Protection Clause, "Plaintiff must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class."); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [] he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment Equal Protection claim.

### D. Section 1 of the Kentucky Constitution

Section 1 of the Kentucky Constitution provides:

> All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:
>
> First: The right of enjoying and defending their lives and liberties.
> Second: The right of worshipping Almighty God according to the dictates of their consciences.
> Third: The right of seeking and pursuing their safety and happiness.
> Fourth: The right of freely communicating their thoughts and opinions.
> Fifth: The right of acquiring and protecting property.
> Sixth: The right of assembling together in a peaceable manner for their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.
> Seventh: The right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons.

Ky. CONST. § 1. However, this section of the Kentucky Constitution does not give way to a private cause of action. *See Taylor v. Univ. Med. Ctr., Inc.*, No. 3:03CV-502-H, 2005 U.S. Dist.

LEXIS 7269, at *8 (W.D. Ky. Apr. 26, 2005) ("There is no private cause of action under Section 1 of the Bill of Rights in the Kentucky Constitution."); *Welch v. Gill*, No. 5:03CV-73-R, 2006 U.S. Dist. LEXIS 14052, at *12 (W.D. Ky. Mar. 28, 2006) ("The Plaintiff may not bring a private cause of action against the Defendants under Section 1 of the Kentucky Constitution.") (citing *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 482-83 (Ky. App. 2005)).

E.   **Section 11 of the Kentucky Constitution**

Section 11 of the Kentucky Constitution provides:

> In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained.

Ky. Const. § 11. Plaintiff does not explain how Defendants' alleged actions violated this section, and the Court has carefully reviewed Plaintiff's complaint and cannot find any allegations that would establish a violation of Section 11 of the Kentucky Constitution. Accordingly, the Court will dismiss this claim.

F.   **Section 17 of the Kentucky Constitution**

Section 17 of the Kentucky Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted." Ky. CONST. § 17. "This section is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky courts." *Simms v. City of Harrodsburg*, No. 06-CV-104-JMH, 2007 U.S. Dist. LEXIS 70250, at *15 (E.D. Ky. Sept. 21, 2007) (citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)). As such, like the Eighth Amendment, it has been held only to apply to convicted prisoners, not pretrial detainees.

6

*Id.* The Court will dismiss this claim.

## G. Injunctive Relief Claims

Since filing this action, Plaintiff has been transferred/released from the DOC's custody (DN 8). An inmate's § 1983 claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred). Here, it is clear that Plaintiff would derive no benefit from granting the requested injunctive relief. Accordingly, because Plaintiff's claims for injunctive relief have been mooted by his release, the Court will dismiss them.

## H. Claims Against KCPC

KCPC, a division of the Kentucky Department of Corrections, is a state agency. *See, e.g., Smith v. Dep't of Corr.*, No. 5:06-CV-P72-R, 2007 U.S. Dist. LEXIS 62852 (W.D. Ky. Aug. 24, 2007). Under the Eleventh Amendment, states and state agencies are immune from suit in federal court, even if the only relief sought is prospective injunctive relief. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (recognizing that suits against states and state agencies "are barred regardless of the relief sought"). While a state may lose its immunity by congressional abrogation or by waiver, Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Thus, KCPC is absolutely immune from § 1983 liability. Accordingly, the Court must dismiss Plaintiff's complaint against it.

**I.    § 1983 Claims against Defendants Walker & Mudd**

For his § 1983 claim against Defendant Walker, Plaintiff alleges:

Walker's culpability lies in his capacity as director over all clinical/medical activities of KCPC, ultimately responsible for day to day operations, wherein petitioner's maladies, as caused, imposed, inflicted and/or incurred/developed over the past 22 months as may be incurred/developed in the future, were the direct and/or indirect result of the medical malpractice of subordinates under the control and direction of Walker.

For his § 1983 claim against Defendant Mudd, Plaintiff alleges:

Dr. Mudd's culpability lies in his capacity as the head Psychiatrist at Metro Corrections, he was ultimately responsible for day to day psychiatric operations at Metro Corrections for many years. Wherein, petitioner's maladies as caused, imposed, inflicted and/or incurred/developed over the past 22 months, or as may be incurred/developed in the future, were the direct and/or indirect result of the medical malpractice of subordinates under the control and direction of Dr. Mudd, resulting in violation of a court order received by medical on 2/16/06, by fax, and in violation of my constitutional rights as guaranteed.

Section 1983 liability must be based on more than *respondeat superior* or the right to control employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). "Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *K.F. v. Jefferson County Sch. Dist.*, No. 3:05CV-246-H, 2007 U.S. Dist. LEXIS 30707, at *8 (W.D. Ky. Apr. 25, 2007) (quoting *Shehee*, 199 F.3d at 300). The Sixth Circuit has stated, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982). Plaintiff does not allege that Defendants Walker and Mudd were personally involved in his care. Rather, his sole theory of liability against them is that they failed to properly oversee Plaintiff's immediate care providers. This is insufficient to state a § 1983 against them. The Court will dismiss Plaintiff's § 1983 claims against Defendants Walker and Mudd.

**J.      Official Capacity Money Damages Claims Against Siddiqui, Walker, and Deland**

The official capacity claims for damages against these state employees will be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Will*, 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, Plaintiff's official capacity claims for damages against Defendants Siddiqui, Walker, and Deland must be dismissed.

**K.      Official Capacity Claims Against Keeling, Kelley, Mudd, and Stingl**

Plaintiff's official capacity claims against these Defendants are actually against the municipality, Louisville-Metro. *Will*, 491 U.S. at 68 ; *Matthews*, 35 F.3d at 1049. "A plaintiff seeking to hold a municipality liable under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-04. "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. "Beyond having to identify 'conduct properly attributable to the municipality itself,' [a plaintiff] must also

demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404) (internal quotation marks omitted). For the purpose of initial review, it suffices to allege, that an individual officer's conduct conformed to official policy or custom. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 165 (1993).

Plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims, and nothing in the record demonstrates that the alleged injuries to Plaintiff resulted from application of a municipal policy or custom. As such, the Court will dismiss his official capacity claims for failure to state a claim.

**L.     Remaining Claims**

    **1.     § 1983 claims**

This leaves Plaintiff's § 1983 individual money damages Fourteenth Amendment Substantive Due Process claim related to the decision to prescribe and leave Plaintiff on Seroquel as against Defendants Siddiqui, Deland, Keeling, Kelley, Stingl, and Prison Health Services, Inc. Additionally, Plaintiff alleges that Defendants Keeling, Kelley, and Prison Health Services Inc. failed to provide timely and adequate medical care as follows: 1) "neglected and/or refused timely professional medical and/or dental treatment . . . forcing Plaintiff to endure severe pain and suffering for sixty days with exposed nerve of [a] broken tooth and a dry socke[t] where the molar tooth was knocked out"; 2) refused to provide Plaintiff with counseling after the suicide of a fellow inmate; 3) refused to alter Plaintiff's mental health treatment after a follow up from Edd Easter-Hogg, MHW, indicated that Plaintiff was not responding favorably to his current treatment; 4) refused to provide treatment for a "profusely bleeding, painful mass of dilated veins in swollen anal tissue and extreme constipation"; 5) refused to properly treat and

manage Plaintiff's diabetes; and 7) refused to provide treatment for Plaintiff's allergies.

To sustain a cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An Eighth Amendment[4] claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[T]he evidence need only show that 'the medical *need* at issue is sufficiently serious.'" *Blackmore*, 390 F.3d at 896 (emphasis added) (quoting *Farmer*, 511 U.S. at 834).

A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Id.* at 898. However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment." *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).

Examples of the latter branch include claims of "delayed administration of medication . . . . or occasional missed doses of medication," *id.*; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether

---

[4]As already noted the Eighth Amendment is not technically applicable because Plaintiff was a pretrial detainee. However, because the rights of pretrial detainees under the Fourteenth Amendment are analogous to those of convicted inmates, Eighth Amendment case law is instructive.

11

the prisoner was treated adequately[,] or whether any delay in providing medical care was harmless." *Id.* In such circumstances, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898 (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill*, 40 F.3d at 1188)). However, "where a plaintiff's claims arise from an injury or illness 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899-900 (citation omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Estelle*, 429 U.S. at 106. The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Id.* at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis fail to state a cause of action. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. And a patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a

12

tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).

Deliberate indifference, however, "'may be established by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Moreover, '[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Terrance*, 286 F.3d at 844 (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

As for Plaintiff's alleged need for counseling after the suicide of a fellow inmate, the Court recognizes that medical needs encompass treatment for mental illness. *Davis v. Oakland County*, No. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. Apr. 7, 1998). However, an inmate must still allege that his mental health problems constitute a serious medical need. *Id.* Plaintiff has failed to sufficiently allege that his mental stress was sufficiently serious to require counseling and treatment. *See e.g., Snider v. Hughes*, No. 95-6052, 1995 U.S. App. LEXIS 15846 (4th Cir. Jun. 27, 1995). Likewise, Plaintiff has not alleged that his allergies were significant enough to warrant protection under the Fourteenth Amendment. *See, e.g.*, *Cantoral v. Kyle*, No. 6:05cv87, 2005 U.S. Dist. LEXIS 37359 (E.D. Tex. June 30, 2005) ("Allergies are not the type of medical problem that trigger the protection of the Constitution.").

Thus, the Court concludes that Plaintiff's claims related to his alleged need for counseling and for treatment of his allergies should be dismissed because Plaintiff has not alleged that those conditions were sufficiently serious to rise to the level of a Fourteenth Amendment violation. The Court will allow the remainder of Plaintiff's Fourteenth

Amendment claims related to his medical treatment as described above to proceed for further development.

### 2. State law malpractice claim

Plaintiff also appears to be asserting a state law medical malpractice claim against the Defendant doctors, Siddiqui, Deland, Walker, Mudd, and Stingl, for proscribing him Seroquel, failing to apprise him of the risks of taking Seroquel, and leaving him on Seroquel after he complained about its side effects. "In Kentucky, if the physician's service falls below the expected level of care and skill and this negligence proximately caused injury or death, then all elements of a malpractice action have been met." *Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 688 (Ky. 2003).

Having determined that Plaintiff has alleged cognizable federal causes of action against Defendants for the purposes of initial review, the Court may, but is not required, to exercise supplemental jurisdiction over the state law malpractice claims. Pursuant to 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." "The facts surrounding the state claim need only be loosely connected to the federal claim to form part of the same case or controversy. *Blakely v. United States*, 276 F.3d 853, 862 (6th Cir. 2002) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

After consideration of the relationship between Plaintiff's federal and state law claims, the Court concludes the exercise of supplemental jurisdiction over Plaintiff's state law medical malpractice claim is proper in this case as the facts between the federal and state claims are

substantially similar.

## IV.  CONCLUSION

To summarize, the Court is allowing the following claims to proceed for further development:

1) Plaintiff's § 1983 individual capacity money damages Fourteenth Amendment Substantive Due Process claim related to the decision to prescribe and leave Plaintiff on Seroquel as against Defendants Siddiqui, Deland, Keeling, Kelley, Stingl, and Prison Health Services, Inc.

2) Plaintiff's § 1983 individual capacity money damages Fourteenth Amendment Substantive Due Process claims against Defendants Keeling, Kelley and Prison Health Services, Inc., as related to Plaintiff's allegations that they a) "neglected and/or refused timely professional medical and/or dental treatment . . . forcing Plaintiff to endure severe pain and suffering for sixty days with exposed nerve of [a] broken tooth and a dry socke[t] where the molar tooth was knocked out"; b) refused to alter Plaintiff's mental health treatment after a follow up from Edd Easter-Hogg, MHW, indicated that Plaintiff was not responding favorably to his current treatment; c) refused to provide treatment for a "profusely bleeding, painful mass of dilated veins in swollen anal tissue and extreme constipation"; and d) refused to properly treat and manage Plaintiff's diabetes; and

3) Plaintiff's state law medical malpractice claim against the Defendant doctors, Siddiqui, Deland, Walker, Mudd, and Stingl for prescribing him Seroquel, failing to apprise him of the risks of taking Seroquel, and leaving him on Seroquel after he complained about its side effects.

The Court will dismiss the remainder of Plaintiff's claims for the reasons discussed above.

The Court will enter Orders consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*, 5510 Eelgrass Court, Apt 5, Louisville, KY 40258
Plaintiff, *pro se*, 551 W. Main St. Tavares, FL 32278
Defendants
Justice & Public Safety Cabinet, Office of Legal Counsel, Frankfort, Kentucky
Jefferson County Attorney

4412.008